**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

NELSON RIVERA-ROSARIO,

    **Plaintiff,**

             **v.**                        **Civil No.** 22-1242 (FAB)

UNITED PARCEL SERVICES (UPS),
*et als.*,

    **Defendants.**


**OPINION AND ORDER**

BESOSA, District Judge.

    Defendant United Parcel Services ("UPS") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56").   (Docket No. 10.)   Plaintiff Nelson Rivera-Rosario ("Rivera") opposes the motion.   (Docket No. 14.)   For the reasons set forth below, UPS's motion for summary judgment is **GRANTED.** (Docket No. 10.)

**I.   Background[1]**

    The Court takes the following facts from UPS's statement of undisputed facts, Rivera's statement of contested and uncontested facts, and the attached exhibits.

    Rivera began working at UPS on February 1, 1995 as a part—time "pre—loader" and "cover driver (substitute driver)."   (Docket

---

[1] The Court has construed these facts in the light most favorable to Rivera in granting UPS's motion for summary judgment.   See <u>McGrath v. Tavares</u>, 757 F.3d 20, 25 (1st Cir. 2014).

No. 10—2 at p. 3.)   UPS and the Unión de Tronquistas de Puerto
Rico, Local 901 ("the Union") are parties to a Collective
Bargaining Agreement ("the CBA") which was in place from August 1,
2008 until July 31, 2013.  Id. at p. 1; Docket No. 10—3.  The only
parties to the CBA were UPS and the Union.  (Docket No. 10—2 at
p. 1.)   Article 3, Section A of the CBA states that the CBA covers
drivers, feeder drivers and part—time package handlers, among
other positions.  Id. at p. 2.   The CBA also specifies how
temporary coverage employee's seniority is calculated for purposes
of job bidding and assignments.  Id.  The CBA also outlines the
grievance procedure, which may only be invoked by an authorized
union representative or the employer.  Id.  The CBA indicates that
"[a]ny agreement reached by the parties at any step of the
Grievance procedure is final and binding upon the Parties," and
that "[t]he decision of the Arbitrator shall be final and binding
on the parties and employees involved."   (Docket No. 10—3 at
pp. 16-17.)

On July 1, 2007, Rivera requested assignment to a permanent
"driver" position.  (Docket No. 10—2 at p. 2.)   The parties
disagree on whether UPS offered Rivera this position, and whether
he rejected this offer.  Id.

The Union filed a grievance on behalf of Rivera on June 23,
2008 with the Conciliation and Arbitration Bureau.  (Docket

No. 10-2 at p. 3.)  On October 4, 2010, the Union and UPS signed a settlement agreement ("the stipulation") agreeing to reinstate Rivera to his previous positions on a part—time basis without a loss of seniority, and in exchange Rivera would withdraw all grievance proceedings.  Id.  Rivera disputes that he agreed to the stipulation because he never signed it.  (Docket No. 14-1 at p. 3.)

The Union then filed a grievance at the Bureau of Conciliation and Arbitration of the Puerto Rico Department of Labor and Human Resources, challenging the failure to assign Rivera to a "driver" position.  (Docket No. 10-2 at p. 3—4.)  An arbitration hearing between the Union and UPS was held on November 17, 2021.  Id. at p. 4.  UPS states that at the hearing, a UPS operation manager named David Rosa testified that Rivera was offered a permanent driver position but rejected it.  Id.  Rivera denies that he was offered this position.  (Docket No. 14-1 at p. 3 ¶ 17.)  UPS submitted the stipulation as an exhibit during the arbitration hearing.  (Docket No. 10-2 at p. 4 ¶ 18.)  Rivera reiterates that this stipulation was not signed by all necessary parties and did not sign it himself.  (Docket No. 14-1 at p. 3 ¶ 18.)

The arbitrator ruled on April 25, 2022 that the case had been resolved by the pre-arbitration stipulation and that UPS had complied with the CBA.  (Docket No. 10-2 at p. 4.)  The arbitrator found that UPS had offered Rivera the position and he had not

accepted it, after which UPS followed the terms of the CBA for
"disposing" of the offer.  Id.

Rivera states that the Union informed him on April 27, 2022
by letter that it would not file a petition to review the
arbitration award and that it authorized him to file a petition
for review in his individual capacity. (Docket No. 14-1 at p. 5.)
Rivera filed a Petition for Review of the Award in his individual
capacity in the Court of First Instance, San Juan Division on
May 19, 2022. (Docket No. 10-2 at p. 5.)  The petition for review
alleges that the arbitrator erred by (1) determining that Rivera
was not entitled to the driver position, when conversely, he met
the requirements pursuant to the CBA, and (2) considering the
stipulation when determining if UPS violated the CBA because it
was not signed by Rivera. (Docket No. 6-1 at pp. 3—4.)

UPS removed the case to this court pursuant to 28 U.S.C.
§ 1441(b) and 29 U.S.C. § 185(a). (Docket No. 1 at pp. 3—4.)

## II.  Standard of Review

Federal Rule of Civil Procedure 56 provides that the Court
shall grant summary judgment if "there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if
the evidence about the fact is such that a reasonable jury could
resolve the point in the favor of the non-moving party.  A fact

is material if it has the potential of determining the outcome of the litigation." Dunn v. Trs. of Bos. Univ., 761 F.3d 63, 68 (1st Cir. 2014) (internal citation omitted).

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation omitted). The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). The movant must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion. Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

Once a properly supported motion has been presented, the burden shifts to the nonmovant "to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted). "When the nonmovant bears the burden of proof on a particular issue, [he or] she [or it] can thwart summary judgment only by identifying competent evidence in the

record sufficient to create a jury question." <u>Tobin</u>, 775 F.3d at 450-51.  Courts draw all reasonable inferences from the record in the light most favorable to the nonmovant, but it disregards unsupported and conclusory allegations.  <u>McGrath v. Tavares</u>, 757 F.3d 20, 25 (1st Cir. 2014).

## III. Discussion

### A.   Section 301

Section 301 of the Labor Management Relations Act ("LMRA") grants original jurisdiction to the district courts of the United States regarding "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce," without regard to the amount in controversy or the citizenship of the parties.  <u>See</u> 29 U.S.C. § 185; <u>see also</u> Docket No. 1 at p. 3—4.  The interpretation of labor contracts, such as a CBA, "under the [Labor-Management Relations Act ("LMRA")] is a matter of federal common law."  <u>Senior v. NSTAR Elec. & Gas Corp.</u>, 449 F.3d 206, 216 (1st Cir. 2006).

"As preconditions to suing their employers under Section 301 for breach of a CBA, employees generally must be willing to (1) exhaust the CBA's grievance procedures and (2) abide by the CBA's finality provisions."  <u>Ramírez-Lebrón v. Intl. Ship. Agency, Inc.</u>, 593 F.3d 124, 131 (1st Cir. 2010) (citing <u>García v. Eidal</u>

Int'l. Corp., 808 F.2d 717, 720 (10th Cir. 1986)).  "As a rule the collective bargaining agreement provides for the final, binding resolution of labor disputes through grievance procedures in which the union fairly represents the aggrieved employee."  Ortiz v. United Parcel Serv., Inc., 736 F. Supp. 2d 428, 429–30 (D.P.R. 2010) (citing United Paperworkers Int'l. Union v. Misco, Inc., 484 U.S. 29, 36–38 (1987)).  "Accordingly, courts have not allowed employees to challenge the underlying merits of arbitration awards by way of Section 301 *absent circumstances that have impugned the integrity of the arbitration process*, for instance, "fraud, deceit, or breach of the duty of fair representation or unless the grievance procedure was a "sham, substantially inadequate or substantially unavailable."'"  Ramírez-Lebrón, 593 F.3d at 131 (emphasis in original) (quoting Harris v. Chem. Leaman Tank Lines, Inc., 437 F.2d 167, 171 (5th Cir. 1971) (*per curiam*)); see also Ortiz, 736 F. Supp. 2d at 431 (dismissing petition to vacate award because "petitioner as an individual employee is not allowed to challenge the merits of an arbitration award by way of Section 301 unless there are circumstances that have impugned the integrity of the arbitration process, such as fraud or breach of duty of fair representation, which are not present in this case.").

"Restricted judicial oversight of arbitration awards is consistent with congressional recognition that '[f]inal adjustment

by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing [CBA].'" Ramírez-Lebrón, 593 F.3d at 131 (quoting 29 U.S.C. § 173(d)).

   **B.   Analysis**

        UPS argues that Rivera does not have standing to challenge the arbitration award, because the arbitration was between the Union and UPS, and Rivera has not alleged that the Union breached its duty of fair representation, or that the integrity of the arbitration process was compromised. (Docket No. 10-1 at pp. 5—6.) Rivera argues, however, that he has standing to petition for review of the arbitration award because the Union informed him via a letter on April 27, 2022 that he had the right to seek judicial review. (Docket No. 14 at p. 2.) UPS replies that pursuant to caselaw a unionized employee can only participate in review of a favorable arbitration award that the Union declines to defend, not challenge an unfavorable award, and that employer reliance on a union's decision not to pursue review of an arbitration award is an important policy goal of labor law. (Docket No. 19-1 at p. 4—6.)

        Article 16, Section 4 of the CBA between the Union and UPS states that "[t]he decision of the Arbitrator shall be final and binding on the parties and employees involved." (Docket

No. 10-3 at p. 17.)   "A CBA generally provides for the *final, binding* resolution of labor disputes through grievance procedures in which the union fairly represents the aggrieved employee(s). Section 301's purpose is to promote the integrity of such an agreement according to its terms."   Ramírez-Lebrón, 593 F.3d at 131 (emphasis in original) (citing United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36-38 (1987)).   Thus, as the First Circuit Court of Appeals has cautioned, "courts have not allowed employees to challenge the underlying merits of arbitration awards by way of Section 301 *absent circumstances that have impugned the integrity of the arbitration process,* for instance, 'fraud, deceit, or breach of the duty of fair representation or unless the grievance procedure was a "sham, substantially inadequate or substantially unavailable."'"   Id. at 131.

Rivera has not alleged in his petition that there was any circumstance that impugned the integrity of the arbitration process.   See Docket No. 6-1.   Instead, Rivera's allegations regard the merits and determinations of the arbitrator and do not impugn the process of arbitration itself; he argues only that the arbitrator erred by determining that Rivera was not entitled to the driver position even though he met the requirements pursuant to the CBA, and in deciding that UPS had not violated the CBA considering that the stipulation was not signed by him.   (Docket

No. 6-1 at pp. 3—4.)   These allegations are insufficient to challenge an arbitration award pursuant to Section 301.   See Ramírez-Lebrón, 593 F.3d at 131.

Rivera nevertheless argues that he is empowered to seek judicial review on the Union's behalf.  (Docket No. 14 at p. 2.) Rivera cites no caselaw for this proposition.  Furthermore, the Union's letter does not even purport to instill Rivera with this ability outright; the letter states instead that if Rivera "wish[es] to [seek judicial review], . . . you must first obtain a release from the Union in order to proceed with your legal action."  (Docket No. 22-1 at p. 1.)  Accordingly, Rivera has no authority to deviate from the First Circuit Court of Appeals' clear direction on the limits to jurisdiction pursuant to Section 301. See Ramírez-Lebrón, 593 F.3d at 131.  Because the Court does not have the jurisdiction pursuant to Section 301 to review the merits of the arbitration award, UPS's motion for summary judgment is **GRANTED**.  (Docket No. 10.)

## IV.  Conclusion

For the reasons set forth above, UPS's motion for summary judgment (Docket No. 10) is **GRANTED**.  This case is **DISMISSED with prejudice.**

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, November 22, 2022.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              SENIOR UNITED STATES DISTRICT JUDGE